UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**MICHAEL S. LONG**                                                          **CIVIL ACTION**

**VERSUS**                                                                        **NO. 07-3005**

**HOWMEDICA OSTEONICS**                                         **SECTION "T" (1)**
**CORPORATION d/b/a STRYKER**
**ORTHOPAEDICS**

<u>**ORDER AND REASONS**</u>

Currently before the Court is Defendant's Motion to Strike paragraphs 39 through 48 of the Plaintiff's Complaint. Rec. Doc. 6. Plaintiff filed an Opposition to the Motion. Rec. Doc. 17. The matter came for hearing without oral argument on September 5, 2007 and was submitted on the briefs. The Court, having considered the memoranda and arguments of the parties, the law, and applicable jurisprudence is fully advised in the premises and ready to rule.

**I.     BACKGROUND**

In 2003, Plaintiffs Michael Long (hereinafter, "Plaintiff") began working for defendant as a sales manager. Rec. Doc. 1 at p. 2 and Rec. Doc. 6 at p. 2. Plaintiff alleges that he began to have heart problems in late 2005 which caused significant and permanent limitations on his life activities. Rec. Doc. 1 at p. 4. Plaintiff alleges he advised Defendant's representatives of his problem in February 2006 and he was approved for a fifteen (15) day Family Medical Leave Act leave beginning February 28, 2006 through March 14, 2006. Rec. Doc. 1 at p. 4. Plaintiff alleges that when he returned from medical leave, he was placed on an improvement plan. Rec. Doc. 1 at p. 6. Defendant asserts that Plaintiff was aware he was not excelling at his job and began raising the possibility of a severance agreement with Defendant leading to his being put on a performance improvement plan. Rec. Doc. 6 at p. 2. Plaintiff allegedly took more medical leave attendant to an open heart surgery and returned to work in September 2006. At that time, he allegedly requested

accommodation under the American Disability Act which was not adhered to by Defendant. Plaintiff also asserts that his sales group was meeting its combined quota prior to and at least up to his return in September 2006. Rec. Doc. 1 at p. 3. Plaintiff's employment was terminated in November 2006 and this suit ensued.

In February 2006, Defendant was sued by a former sales representative for gender discrimination. Because the former representative worked under Plaintiff, in house counsel for Defendant discussed with him the allegations in that suit. At the time, Plaintiff was a member of Defendant's management team and they assert that any communications to its counsel are subject to the attorney/client privilege. Rec. Doc. 6 at p. 2. The communications between counsel for Defendant and Plaintiff led to Plaintiff drafting a sworn declaration. Many edits were made and the declaration was ultimately signed. Rec. Doc. 6 at p. 3.

On an unknown date, the deposition of Defendant's in-house counsel proceeded in the gender discrimination case and prior to those depositions, counsel for Defendant, anticipating that privileged matters would be asked, informed counsel for the plaintiff in that case (the same counsel involved here) that they were not waiving any privileges. In May 2007, Plaintiff filed the instant complaint alleging violations of civil rights, the American with Disabilities Act, Age Discrimination, the Family Medical Leave Act and Louisiana's Employment Discrimination Law. See Rec. Doc. 1. It is the allegations contained in Paragraphs 39 through 48 of that Complaint which discuss the conversations between Plaintiff and in-house counsel for Defendant that are the subject matter of the instant Motion to Dismiss.

Defendant urges that the allegations are being used to insult and harass Defendant and its attorneys and to impinge on Defendant's legal rights. Defendant argues that such conduct is

"scandalous, redundant in context, and improper" and that the allegations in the Complaint be stricken. Rec. Doc. 6 at p. 5. Further, Defendants urge that the communications discussed in the Complaint are subject to the attorney-client privilege and therefore, should likewise be stricken. Rec. Doc. 6 at pp. 8-10.

Plaintiff counters that counsel for Defendant impliedly waived any attorney-client privilege. Plaintiff argues his Complaint does not address legal advice given in the gender discrimination case; rather, his Complaint discusses communications he had with Defendant's in-house counsel about the content of his declaration, the facts that were included or not included and why such was included or not included in the declaration. Rec. Doc. 17 at p. 3. Finally, Plaintiff urges that the one of the retaliation issues raised is whether he was retaliated against for his support of the terminated employee in the gender discrimination matter. He claims that he has no other way to show that discrimination and retaliation other than by disclosing the communications between Defendant's in-house counsel and himself during his participation in the gender discrimination suit. Accordingly, he urges that he has a substantial need to disclose this information and that the Court should therefore, deny the Motion to Strike. Rec. Doc. 17 at p. 4.

## II.   LAW AND ANALYSIS

Federal Rule of Civil Procedure Rule 12 (f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act: (1) on its own; or (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 20 days after being served with the pleading." "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial...." *Sidney-Vinstein*

*v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir.1983).  If there is any doubt as to whether the allegations might be an issue in the action, courts will deny the motion.  *See Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir.1993) rev'd on other grounds, 510 U.S. 517, 534-35, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994).   "Impertinent" has been defined as allegations that are not responsive or irrelevant to the issues that arise in the action and which are inadmissible as evidence.  *Id.*  "Scandalous" includes allegations that cast a cruelly derogatory light on a party or other person.  *See Skadegaard v. Farrell*, 578 F.Supp. 1209, 1221 (D.N.J.1984).

The paragraphs of the complaint which Defendant seek to strike pursuant to FRCP 12(f) are as follows:

> 39. Plaintiff alleges that on approximately February 22, 2006, Mitzie Plaeger ("Ms. Plaeger") a sales representative who had worked under him in the New Orleans Branch and who had been terminated on or about April 5, 2005, filed a federal lawsuit alleging gender discrimination.
>
> 40. Plaintiff alleges that on September 13, 2006 he had a conference call with Stryker's outside counsel Steven Hymowitz ("Mr. Hymowitz") and Michael Puca ("Mr. Puca").
>
> 41. The purpose of this conference was to get Mr. Long's input as to the validity of Ms. Plaeger's claims.
>
> 42. At that time, plaintiff told Mr. Hymowitz and Mr. Puca that Ms. Plaeger got a raw deal and that she had been subjected to gender discrimination by Mr. Ridgeway, the Branch Manager.
>
> 43. Plaintiff alleges that neither Mr. Hymowitz nor Mr. Puca were happy about that statement.
>
> 44. On or about September 26, 2006, he personally met with Mr. Hymowitz. At that time, Mr. Hymowitz told him that the verbal and written statements concerning Ms. Plaeger were "very important to his career." Plaintiff alleges Mr.

        Hymowitz conveyed to him that any verbal or written statement supporting Mr. Plaeger's gender discrimination claims would be detrimental to his career.

45. At that time, Plaintiff alleges that he reiterated to Mr. Hymowitz that he did feel Ms. Plaeger had been subjected to gender discrimination.

46. Plaintiff alleges that during the meeting, he was presented with a "cherry-picked" declaration which only stated things potentially in support of Stryker's positions and left out other comments that he had made and wanted to include in the declaration concerning the validity of Ms. Plaeger's gender discrimination claims.

47. Plaintiff alleges that it was conveyed by Mr. Hymowitz both directly and indirectly that if he did not play the game by signing the declaration as composed by Mr. Hymowitz that he would be dealt with up to and including termination.

48. Accordingly, Plaintiff alleges that he was coerced into signing the "cherry picked" declaration.

Rec. Doc. 1 at pp. 8-10.

     The Court finds that Defendant's argument that the allegations in the aforementioned paragraphs of the Complaint should be stricken because they are "scandalous" have merit. Rec. Doc. 6, at p. 6. The allegations in paragraphs 44, 46, 47 and 48 clearly allege proposed unethical and unprofessional conduct and unnecessarily reflects on the moral character of Defendant's in-house attorneys. Further, these allegations clearly cast a cruelly derogatory light on Defendant's in-house counsel.

     The allegations in the remaining paragraphs, 39, 40, 41, 42, 43 and 45 are not scandalous and are not stricken as such. The Court further finds that the allegations in these paragraphs are pertinent to Plaintiff's retaliatory discharge claim based upon his giving support to the terminated employee in the gender discrimination case. Because the allegations contained in these paragraphs are

responsive or relevant to those issues that arise in this action, the Court rejects Defendant's arguments that these paragraphs be stricken as "impertinent" under FRCP 12(f). While ultimately it may be found, as Defendant argues, that this retaliation claim may fail because Defendant's in-house attorneys did not have any authority to act in retaliation against Plaintiff and that the attorneys' comments cannot be imputed to the Defendant, such arguments are reserved for and should be dealt with on a Motion for Summary Judgment and not a FRCP 12(f) Motion to Strike allegations in a Complaint.

Finally, the Court strikes paragraphs 42 and 45 because the communications contained therein are protected by the attorney-client privilege. The attorney-client privilege prevents disclosure of communications between an attorney and client that were made while seeking or rendering legal services. *See Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). The privilege applies whether an attorney works at a law firm or works as in-house counsel for a corporation. *See, e.g., In re Sealed Case*, 737 F.2d 94, 99 (D.C.Cir.1984) (concluding that status as an in-house attorney "does not dilute the privilege," but stating that the privilege applies only if the attorney gave advice "in a professional legal capacity"); *Upjohn Co.*, 449 U.S. at 390, 101 S.Ct. 677 ("[T]his Court has assumed that the privilege applies when the client is a corporation ...." (citation omitted)). While the privilege may attach to communications between the managers and attorneys, the privilege belongs to the company, not the individual corporate representative. Thus, the power to waive the corporate attorney-client privilege rests with the corporation's management and is normally exercised by its current officers and directors. *Commodity Futures Trading Comm'n v. Weintraub,* 471 U.S. 343, 348-49, 105 S.Ct. 1986, 85 L.Ed. 2d 272  (1985). The burden is on the party asserting the privilege to demonstrate how each

document satisfies all the elements of the privilege. *See Hodges, Grant & Kaufmann v. United States*, 768 F.2d 719, 721 (5th Cir.1985). Additionally, the party asserting the attorney-client privilege must prove that waiver by breach of confidentiality did not occur. *United States v. Mobil Corp.*, 149 F.R.D. 533, 536 (N.D.Tex.1993). The privilege attached to the communications between Plaintiff and Defendant's in-house counsel during their communications surrounding the gender discrimination case. At that time, Plaintiff was still Defendant's employee and not an officer or director of the company. Thus, the only party which can waive the privilege is the Defendant itself. No waiver has occurred; therefore, the privilege remains in tact.

Accordingly, and for the foregoing reasons,

**IT IS ORDERED** that Defendant's Motion to Strike (Rec. Doc. 6) is **GRANTED** in part and **DENIED** in part. The Motion is **GRANTED** as to Paragraphs 42, 44, 45, 46, 47 and 48. The Motion is **DENIED** as to Paragraphs 39, 40, 41 and 43.

**IT IS FURTHER ORDERED** that Plaintiff re-file his Complaint, within thirty (30) days of signing this order, eliminating the stricken paragraphs from the new pleading.

New Orleans, Louisiana, this 18th day of December, 2007.

_____
**G. THOMAS PORTEOUS, JR.**
**UNITED STATES DISTRICT JUDGE**